GEORGE H. GLADE V. CHARLES C. WHITE ET AL.

FILED FEBRUARY 1, 1893. No. 4523.

Master and Servant: EMPLOYMENT OF SERVANT BY MEMBER OF PARTNERSHIP: ACTION AGAINST FIRM FOR WAGES: EVIDENCE. Under the issues presented by the pleadings the question presented is whether or not the plaintiff was employed by the firm of W. & G., and rendered services for it, or whether he was employed by G., his father, and represented him as a member of the firm. *Held*, That the evidence clearly established the fact that the plaintiff was employed and represented G., his father, and not the firm of W. & G., and that such firm was not liable for his services.

ERROR from the district court of Saline county. Tried below before MORRIS, J.

*Hastings & McGintie* and *M. A. Hartigan*, for plaintiff in error.

*F. I. Foss, contra.*

MAXWELL, CH. J.

In the year 1882 the defendant White became a partner with George W. Bridges in the milling business at Crete, and this relation continued until May, 1885, when Bridges sold his interest to John D. Glade. Glade was a well to do farmer who resided a short distance from Crete. The plaintiff is his son, and in the spring of 1885 was about twenty-two years of age. So far as appears neither of the Glades had any experience in the milling business. The business seems to have been very profitable, and was continued on an extensive scale until December, 1888, when White purchased the interest of Glade in the property and assumed the debts. Afterwards this action was brought by the plaintiff against the firm for services. The defendants filed separate answers. John D. Glade in his answer admits the service of the plaintiff, and in effect asks that judgment be rendered against the firm. White, in his answer, first denies the facts stated in the petition except as to certain matters admitted, but alleged that the plaintiff represented his father in the milling business, and that there was no agreement or claim for wages during the existence of said partnership. Other facts tending to show that the plaintiff had no right to recover are pleaded, which need not be noticed. On the trial of the cause the jury found in favor of White, but against John D. Glade, in the sum of $5,000, upon which judgment was rendered. The question presented by the issue is this: Was the plaintiff an employe of the firm of White & Glade, or did he represent his father in the business?

W. H. Vance, a witness called by White, testifies:

A. During the first week in January, 1888, I was standing in the post-office window, about noon, waiting for the mail to be distributed. While there Glade came in—

I had been introduced to him the Sunday evening before— and for the first time entered into a little conversation with him. I asked Mr. Glade if he was employed at the mill; he rather hesitated in his reply, and from the manner in which he——

(Objected to by the plaintiff.)

Q. What took place?

A. I asked Mr. Glade if he was employed at the mill He gave me somewhat of an evasive answer. I asked him then if he was a partner of Mr. White's, I believe I said "You must be the partner of Mr. White's," and he replied " No, sir; I am not the partner of Mr. White, I am the active partner; my father is the silent partner, I represent my father's interest in the firm." He used these terms, that he was the active partner and his father was the silent partner and he represented his father's interest in the firm."

The plaintiff does not deny this. He claims that he does not remember.

John R. Johnson testifies:

A. The first conversation I had with Glade was in the morning; I was coming up at the time the deal was made. The day the deal was made I talked with Mr. Glade and his father down to the mill and Mr. Bridges, myself, John D. Glade, and George Glade looked the property over, and I went down to the dam and was showing him where the lines were, discussing about a piece of ground that was to be left out, and they bought the mill there, that is, they closed the deal so far as words were concerned, right at that place, and I asked John Glade if he was going to attend to the mill and he said he was not, he was buying it for George; and I said, " are you going to have it deeded to George?" and he said, "Oh, no, I will let George run it; he is a good boy and I am going to let him run it for me and look after my interests."

Q. What conversation did you have that day with George, at or about the same time?

A. He said he was going to run it for his father.

Q. Where did that conversation take place?

A. It was talked around, I don't know just where; we were walking. They were going to enter into a contract that day.

This is not directly denied.

George D. Stevens testifies:

Q. Do you remember some time in the month of May, 1885, of having a conversation with George H. Glade in the state bank in regard to same?

A. I do.

Q. State that conversation.

A. I cannot give it—it was quite a long conversation I had with him, and part of it was about the purchase of the mill by his father, and he then told me—I think I asked him, I am sure I did, if his father was going in the milling business. He told me that he was going to run it.

Q. Did you have any other conversation in regard to that matter with Mr. Glade about that time?

A. Why, I have talked to Mr. George Glade a great many times about it.

Q. In the conversations what did he say in regard to——

(Objected to as incompetent.)

A. Possibly I did not understand that.

Q. Tell what conversation or talk took place, and when and where.

A. I could not begin and give the number of times I have ever talked with him about this matter, the exact conversation, but in all the conversations I have ever had with him in reference to this matter I have understood from him and lead to believe from what he said—

By the court: State what he said.

A. He said a great many times to me that he was managing and looking after his father's interest in the mill. At one time I asked him if White spent his own time there, and he said no, he was to look after the outside

interest while he remained there and looked after his father's interest, and looked after the mill when Mr. White was not there. I cannot give the number of times that I have conversed with Mr. Glade on that matter.

A number of other witnesses testify to the same effect. The plaintiff was unable to remember many of these conversations, but in our view the fact is established beyond question that the plaintiff rendered his services to his father and not to the milling company, and that White is not liable. It is unnecessary to review the various assignments of error at length. The judgment is the only one that should be rendered on the evidence, and it is

AFFIRMED.

THE other judges concur.